## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
## EASTERN DIVISION

### No. 4:12-CV-195-D

| | |
|---|---|
| CORY BRYANT, | ) |
| *on behalf of Charise Fisher (Deceased)*, | ) |
| | ) |
| Plaintiff/Claimant, | ) |
| | ) |
| v. | ) |
| | ) |
| CAROLYN W. COLVIN, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM AND
RECOMMENDATION**

This matter is before the court on the parties' cross motions for judgment on the pleadings [DE-18, -26] pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Plaintiff Cory Bryant ("Plaintiff") filed this action on behalf of the now deceased Claimant Charise Fisher ("Claimant") pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) seeking judicial review of the denial of her applications for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") payments. The time for filing responsive briefs has expired and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, it is recommended that Plaintiff's Motion for Judgment on the Pleadings be granted, Defendant's Motion for Judgment on the Pleadings be denied, and the case be remanded for further proceedings consistent with the memorandum and recommendation.

### I. STATEMENT OF THE CASE

Claimant protectively filed an application for a period of disability, DIB, and SSI on April 23, 2004, alleging disability beginning March 15, 2000. (R. 143-46). Both claims were denied initially and upon reconsideration. (R. 45-46). A hearing before Administrative Law Judge ("ALJ")

Juan Marrero was held on March 3, 2008, at which Claimant was represented by counsel and a vocational expert ("VE") appeared and testified. (R. 717-42). On April 3, 2008, the ALJ issued a decision denying Claimant's request for benefits (R. 758-73), but the Appeals Council granted Claimant's request for review, vacated the ALJ's decision, and remanded the case to the ALJ for further consideration. (R. 54-56). On May 26, 2010, ALJ Richard Perlowski held another hearing, at which Claimant was represented by counsel and a VE appeared and testified. (R. 779-815). On July 7, 2010, the ALJ issued a decision denying Claimant's request for benefits (R. 21-31), and the Appeals Counsel denied Claimant's request for review on July 11, 2012 (R. 10-13). Claimant died on October 13, 2011, and Plaintiff filed a complaint in this court seeking review of the now final administrative decision denying his deceased mother benefits. [DE-2, -7].

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). Substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), but is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility

2

determinations, or substitute [its] judgment for that of the Secretary." *Mastro v. Apfel*, 270 F.3d 171,

176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Rather, the court's

review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his

or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131

F.3d 438, 439-40 (4th Cir. 1997).

## III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth

in 20 C.F.R. §§ 404.1520, 416.920:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently
> working; and (2) must have a "severe" impairment that (3) meets or exceeds [in
> severity] the "listings" of specified impairments, or is otherwise incapacitating to the
> extent that the claimant does not possess the residual functional capacity to (4)
> perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 474 n.2 (4th Cir. 1999). "If an applicant's claim fails

at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65

F.3d 1200, 1203 (4th Cir. 1995). The burden of proof and production during the first four steps of

the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other

work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with

the "special technique" described in 20 C.F.R. §§ 404.1520a(b)-(c) and 416.920a(b)-(c). This

regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of

functional limitation resulting from a claimant's mental impairment(s): activities of daily living;

social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* §§

404.1520a(c)(3), 416.920a(c)(3). The ALJ is required to incorporate into his written decision

3

pertinent findings and conclusions based on the "special technique." *Id.* §§ 404.1520a(e)(3), 416.920a(e)(3).

In this case, Plaintiff alleges (1) the ALJ erred by failing to find that Claimant's impairments meet Listing 12.05; and (2) new and material evidence, namely Claimant's subsequent approval for benefits, warrants remand. Pl.'s Mem. [DE-19] at 5-9.

## IV. FACTUAL HISTORY

### A. ALJ's Findings

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. (R. 23-31). At step one, the ALJ found Claimant had engaged in substantial gainful employment in 2008, but that there had been continuous 12-month periods during which time Claimant did not engage in substantial gainful activity. (R. 23-24). Next, the ALJ determined Claimant had the following severe impairments: borderline intellectual functioning; depression; obesity; asthma; diabetes mellitus; and a history of substance abuse. (R. 24). At step three, the ALJ concluded that Claimant's impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 26-27). Applying the technique prescribed by the regulations, the ALJ found that Claimant's mental impairments have resulted in mild limitations in activities of daily living, moderate difficulties in social functioning and concentration, persistence and pace, and one to two episodes of decompensation, each of extended duration. (R. 27).

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the

4

ability to perform sedentary work[1] with additional limitations (i.e., avoid excessive exposure to fumes, gases, dust, or other respiratory irritants; face to face public contact; and the work must be simple, routine and repetitive in nature). *Id.* In making this assessment, the ALJ found Claimant's statements about her limitations not fully credible. (R. 28-29).

At step four, the ALJ concluded that Claimant could not perform the requirements of her past relevant work. (R. 29). Nonetheless, at step five, upon considering Claimant's age, education, work experience and RFC, the ALJ determined that Claimant was capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. (R. 29-30). Accordingly, the ALJ determined Claimant was not disabled from the alleged onset date through the date of decision. (R. 30).

## B. Testimony of Claimant

At the time of the May 26, 2010 administrative hearing, Claimant was 41 years old and separated from her husband. (R. 783). Claimant had been living alone in an apartment for approximately one week, and prior to that was living with her mother. (R. 783, 785, 796). Claimant completed the seventh grade and attempted to obtain a GED, but was unable to pass the test. (R. 784). Claimant could read, but had difficulty with comprehension. *Id.* Claimant received food stamps and government assistance for housing, but had no other income. (R. 784-85). Claimant had difficulty maintaining work due to her health problems. (R. 787). Claimant's longest period of

---

[1] Sedentary work involves lifting no more than ten pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. §§ 404.1567(a), 416.967(a); SSR 96-9p, 1996 WL 374185, at *3 (July 2, 1996). "Occasionally" generally totals no more than about two hours of an eight-hour workday. "Sitting" generally totals about six hours of an eight-hour workday. SSR 96-9p, 1996 WL 374185, at *3. A full range of sedentary work includes all or substantially all of the approximately 200 unskilled sedentary occupations administratively noticed in 20 C.F.R. § 404, Subpt. P, App. 2, Table 1. *Id.*

5

employment was working as a dispatcher at Eagle Taxi for approximately two years in 2001 and 2002. (R. 786-87). In 2008 and 2009, Claimant worked at Wal-Mart for almost a year as an overnight stocker and greeter, but was terminated for excessive absences due to recurring hospitalizations. (R. 785-86). Claimant also worked for a few months at Pizza Hut and for some period of time at Burger King and KFC/Taco Bell, but she could not remember the dates of employment. (R. 786-87).

Claimant discussed a number of conditions precluding work, including back and lower leg problems, shoulder, arm and wrist pain, asthma, diabetes, and high blood pressure. (R. 789). Claimant was 4' 10-1/2" tall and weighed 225 pounds. (R. 791-92). Claimant had experienced back and lower leg problems for approximately four to five years and was treated with pain medication, which caused drowsiness, and she occasionally used a walker (not prescribed by a doctor). (R. 789, 794). Claimant experienced pain and swelling in her feet, which she relieved by sitting and elevating her legs. (R. 800-01). Claimant had pain in her arms and wrists and experienced cramping in her hands, making it difficult for her to hold small objects. (R. 798). Claimant had a ten to eleven year history of asthma, and the ALJ acknowledged the audible noise from her breathing during the hearing. (R. 789, 797). Claimant's breathing problems worsened with activity, and Claimant's supervisor at Wal-Mart allowed her to take brakes when she had breathing problems. (R. 790, 797). Claimant's asthma had continually worsened, resulting in multiple hospital visits. (R. 790). Claimant could not remember how long she had been diabetic, for which she took two medications, but not insulin. (R. 790-91). Claimant had high blood pressure for which she took medicine that caused dizziness. (R. 800). Claimant also had depression, for which she had been recently hospitalized, and took Zoloft and Abilify. (R. 792). Claimant had difficulty interacting with people

6

as a result of her depression and had little interaction with family or friends. (R. 788, 792). When questioned by the ALJ regarding side effects associated with her depression medications, Claimant stated she had nightmares, but also expressed confusion as to what the ALJ was asking. (R. 788). Claimant experienced panic attacks at times while interacting with people, which negatively impacted her breathing. (R. 800). Claimant had a substance abuse problem, but stopped using drugs and alcohol in 2009 after she began attending Narcotics Anonymous meetings three to four times a week. (R.793-94).

Claimant could stand leaning against the sink to do dishes for ten to fifteen minutes before needing to sit down and could sit for fifteen to twenty minutes before needing to stand. (R. 796). Claimant had not been given any lifting restrictions by a doctor, but experienced pain when lifting a wooden foot stool she used around the house. *Id.* Claimant's friend, Thomas Sutton, would come to her home daily to check on her and assist with cleaning and cooking, and Claimant's mother did most of the chores when Claimant lived in her mother's home, although Sutton also assisted Claimant at her mother's home. *Id.* Claimant was no longer driving because she believed her license was revoked within the prior year for failing to pay a ticket. (R. 783). Claimant was essentially estranged from her family and her few friends were from her Narcotics Anonymous group. (R. 802-03).

## C. Testimony of Thomas Sutton

Claimant's friend, Thomas Sutton, testified at the administrative hearing. (R. 806-08). Sutton met Claimant in September 2009, at a Narcotics Anonymous meeting and had been helping Claimant most every day. (R. 806-07). Sutton indicated Claimant was slow and tired quickly. (R. 807). Sutton encouraged Claimant to walk with him from her mother's house to meetings, six or

7

seven blocks away, which took Claimant forty-five minutes because she had to stop and sit down or lean against a light pole to rest. *Id.* Sutton helped Claimant with cleaning because it hurt Claimant's back to bend and also assisted her with bathing and getting up and down. (R. 807-09).

## D. Testimony of Vocational Expert

Theodore Sawyer testified as a VE at the administrative hearing. (R. 809-14). After the VE's testimony regarding Claimant's past work experience (R. 809-10), the ALJ posed the following hypothetical:

Sir, I want you to assume a hypothetical individual the same age, education and work background as that of the Claimant. I want you to further assume that this individual is limited to forms of sedentary work as that term is defined in the regulations, and this individual be limited to performing simple, routine and repetitive tasks (INAUDIBLE) change in work processes from day to day, and also needs (INAUDIBLE) face to face contact with the public.

(R. 810). The VE opined that the hypothetical individual could perform the following jobs: surveillance system monitor (DOT # 379.367-014), egg processor (DOT # 559.687-034), and atomizer assembler (DOT # 786.384-030). *Id.* The VE also stated that the added restriction of avoiding excessive dust, fumes, gasses or similar pulmonary irritants would not change his opinion. (R. 811). Finally, the VE opined that a hypothetical individual with all the limitations discussed in the hearing testimony would not be employable on a full-time competitive basis. *Id.* In response to questioning by Plaintiff's counsel, the VE opined that a person who required six breaks a day, missed one day of work a week, or who did not have the ability to remember simple instructions over the course of the day would not be able to perform the above listed jobs. (R. 811-12).

## V. DISCUSSION

## A. The ALJ's Evaluation of Listing 12.05C

Plaintiff contends that the ALJ erred in determining Claimant did not meet Listing 12.05C.

8

Pl.'s Mem. at 5-8. Plaintiff bears the burden of demonstrating that Claimant's impairments meet or equal a listed impairment. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981). To meet the requirements of Listing 12.05, a claimant's impairment must first satisfy the diagnostic description for intellectual disability.[2] 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00A. Specifically, the claimant must demonstrate (1) significantly subaverage general intellectual functioning; (2) deficits in adaptive functioning; and (3) onset before the age of twenty-two. *Id.* § 12.05. "Deficits in adaptive functioning can include limitations in areas such as communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety." *Jackson v. Astrue*, 467 F. App'x 214, 218 (4th Cir. 2012) (citing *Atkins v. Virginia*, 536 U.S. 304, 309 n.3 (2002)). Upon satisfaction of the diagnostic description, the claimant must meet the required severity level of the disorder, which is accomplished by satisfying any one of four categories labeled (A)-(D). 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05.

In this case, Plaintiff contends Claimant satisfies the intellectual disability listing under category C, which requires (1) a valid verbal, performance or full scale IQ of 60 through 70; and (2) another impairment, physical or mental, imposing an additional and significant work-related limitation of function. *Id.* § 12.05C. The "significant work-related limitation" requirement is satisfied where the ALJ has found that a claimant has other severe impairments. *Luckey v. U.S. Dep't of Health & Human Servs.*, 890 F.2d 666, 669 (4th Cir. 1989); 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00A (describing "significantly limits" as, "i.e., is a 'severe' impairment(s), as defined

---

[2] Effective September 3, 2013, the term "mental retardation" was replaced with "intellectual disability" in the Listing of Impairments. *See* Change in Terminology: "Mental Retardation" to "Intellectual Disability," 78 Fed. Reg. 46499 (Aug. 1, 2013). The terms are used interchangeably herein.

9

in §§ 404.1520(c) and 416.920(c)").

The ALJ determined Claimant satisfied neither the diagnostic criteria for intellectual disability nor the category C criteria. (R. 24, 26). Because both the diagnostic criteria and the category C criteria must be satisfied in order for Claimant's mental impairments to meet Listing 12.05C, if the ALJ's determination in either regard is supported by substantial evidence and not contrary to law, then his decision must be upheld. *See Hancock v. Astrue*, 667 F.3d 470, 474 (4th Cir. 2012) (finding that the claimant can prevail only by establishing that the ALJ erred in his analysis of both the diagnostic criteria and the category C criteria).

With respect to the diagnostic criteria, the ALJ found Claimant had "demonstrated a high degree of adaptive functioning over the years by working many years at significant gainful activity as an assembler, baby sitter, food preparer, taxi dispatcher and stocker at Wal-Mart" and that "when the claimant has earned her own money, she paid her own bills and raised a child." (R. 24). The Fourth Circuit has expressly rejected the reasoning applied by the ALJ–that a prior work history proves a claimant is not disabled despite other evidence that a claimant meets the Listing 12.05C criteria. *See Luckey*, 890 F.2d at 668-69 ("[T]he Secretary may not rely upon previous work history to prove non-disability where the section 12.05(C) criteria are met: 'When a claimant for benefits satisfies the disability listings, benefits are due notwithstanding any prior efforts of the claimant to work despite the handicap.'") (quoting *Murphy v. Bowen*, 810 F.2d 433, 438 (4th Cir. 1987)). *See also Shaw v. Astrue*, No. 4:08-CV-132-D, 2009 WL 2486932, at *7 (E.D.N.C. Aug. 13, 2009) (remanding case to permit required analysis pursuant to Listing 12.05; "[T]he fact that [a claimant] has a history of continuous employment in the past is irrelevant to whether he has subsequently become disabled due to the development of additional severe impairments.") (quoting *Muntzert v.*

10

*Astrue*, 502 F. Supp. 2d 1148, 1158 (D. Kan. 2007)). Furthermore, the record in this case does not support the ALJ's finding that Claimant "worked many years at significant gainful activity as an assembler, baby sitter, food preparer, taxi dispatcher and stocker at Wal-Mart." (R. 24).

First, Claimant's past work as an assembler and fast food worker was found not to constitute substantial gainful activity by the Appeals Council, which formed part of the basis for vacating and remanding the first ALJ's decision denying benefits. (R. 54). Next, the ALJ's listing of Claimant's earnings and work history indicate scant employment during the relevant period with the exception of Claimant's work at Wal-Mart from 2008 to 2009, from which she was terminated for excessive absences. (R. 23) (listing earnings of "$6,298.00 in 2007 while working for Carrols Corporation and $800.98 from Coastal Plains Restaurant; $11,112.85 in 2008 while working at Wal-Mart and $112.25 for Rage Administrative and Marketing in 2008; and $5,815.27 in 2009 while working tor Wal-Mart"). Finally, the fact that Claimant raised a child does not necessarily preclude a finding that Claimant had deficits in adaptive functioning. *See Radford v. Astrue*, No. 5:08-CV-421-FL, 2009 WL 1675958, at *6 (E.D.N.C. June 10, 2009) (adopting recommendation of magistrate judge that ALJ failed to properly articulate his findings in support of conclusion that claimant lacked deficits in adaptive functioning; "[T]he fact an individual is able to work, complete household chores, and raise a family is not inconsistent with mild mental retardation.").

There is also substantial evidence in the record with respect to Claimant's deficits in adaptive functioning manifesting before age 22: Claimant had both academic and social difficulty in school, was in the EMH (Educatable Mentally Handicapped) program until she dropped out of school after seventh grade, was unable to obtain a GED, had difficulty with reading comprehension, and had been diagnosed with mild mental retardation by a DDS examining consultant on three occasions (August

11

22, 2003, August 9, 2004, and December 2, 2009). (R. 75-88, 235-41, 334-36; 373-75, 490-93, 784). *See Jackson*, 467 F. App'x at 218 (concluding evidence that claimant was in special needs classes, dropped out of school in the tenth grade, was unable to obtain her GED, reads at a sixth-grade level, and had cognitive functioning in the "mildly mentally retarded range of intellectual functioning" demonstrated claimant had deficiencies in adaptive functioning); *Williams v. Colvin*, No. 5:12-CV-676-D, 2013 WL 6058204, at *5 (E.D.N.C. Nov. 15, 2013) (adopting the conclusions of the memorandum and recommendation; "Listing 12.05C 'makes it clear that mental retardation is a life-long, and not acquired, disability.'") (quoting *Smith v. Barnhart*, No. 6:04-CV-34, 2005 WL 823751, at *4 (W.D. Va. Apr. 8, 2005)).

The ALJ erred in determining that Claimant's adaptive functioning was inconsistent with the requirements of Listing 12.05 based on Claimant's work history and ability to care for her child, and the ALJ should have considered and weighed additional relevant factors, as outlined in *Jackson*, such as Claimant's limitations in the areas of communication, self-care, social/interpersonal skills, and functional academic skills. 467 F. App'x at 218; *see also Williams*, 2013 WL 6058204, at *8 (adopting the conclusions of the memorandum and recommendation that the ALJ failed to properly evaluate whether the claimant met Listing 12.05C, where the fact that the claimant completed through the sixth grade in school, repeated the third and fourth grades, and attended special education classes constituted evidence of "deficits in adaptive functioning manifested before age 22.") (citing *Radford*, 2009 WL 1675958, at *5 (finding evidence of deficits in adaptive functioning where claimant participated in special education classes and had not worked for more than ten years); *Wynne v. Astrue*, No. 5:09-CV-367-FL, 2010 WL 2402843, at *5 (E.D.N.C. May 21, 2010) (finding deficits in adaptive functioning in functional academic skills area shown where claimant "received

12

a seventh grade education only and repeated both third and sixth grades")). Notwithstanding the ALJ's error in analyzing the diagnostic criteria, Plaintiff can prevail only by establishing that the ALJ erred in his analysis of both the diagnostic criteria and the category C criteria.

The ALJ determined Claimant did not satisfy the category C criteria, stating as follows: "In terms of the requirements in paragraph C, they are not met because the claimant does not have a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." (R. 26). However, in the ALJ's discussion classifying Claimant's borderline intellectual functioning as a severe impairment, the ALJ acknowledged that Claimant did have IQ scores in the 60 to 70 range:

> The medical evidence reveals that the claimant has a borderline intellectual functioning. **Her I.Q. has been tested several times, attaining full scale scores ranging from 70 +/-4 in 1980 to 73 in 1982 to 65 in August 2004 and 67 in December 2009** (Exhibits E, pp 5 and 1F, E pp 9 and 2F, Exhibit 19F and 40F) using the Wechsler Intelligence Scale Revised Edition, Wechsler Intelligence Scale for Children Third Edition (WISC-III) and Wechsler Adult Intelligence Scale, Third Edition.

(R. 26) (emphasis added). While it is within the ALJ's discretion to weigh conflicting IQ scores, *see Hancock*, 667 F.3d at 474 (explaining that the ALJ may weigh conflicting IQ test results) (citing *Murphy*, 810 F.2d at 437), it is not apparent from the ALJ's decision why he declined to consider or discounted Claimant's IQ scores in the 60 to 70 range, which would satisfy Listing 12.05C, and the Commissioner's explanation in briefing for the ALJ's findings and conclusions is no substitute for the ALJ's analysis.[3] *See Pearson v. Astrue*, No. 5:10-CV-143-D, 2011 WL 4352191, at \*4 (E.D.N.C. Sept. 16, 2011) ("[T]his court will not guess concerning the ALJ's analysis."); *DeLoatche*

---

[3] The Commissioner also notes that in the subsequent favorable decision the ALJ determined Claimant's impairments did not meet Listing 12.05. Def.'s Mem. [DE-27] at 29-30. However, a review of the subsequent decision reveals the ALJ simply stated in a conclusory fashion that Claimant failed to meet Listing 12.05 and provided no reasoning or support for this conclusion. Pl.'s Mem. Ex. 1 [DE-19-1] at 8. Thus, the subsequent determination is not persuasive.

13

*v. Heckler*, 715 F.2d 148, 150 (4th Cir.1983) ("It may be, of course, as the Secretary suggests on appeal, that the ALJ considered all of these factors and proposed to himself cogent reasons for disregarding them. However, on this record we cannot so determine. The Secretary must present us with findings and determinations sufficiently articulated to permit meaningful judicial review."). The ALJ also found Claimant suffered from several severe impairments, including depression, obesity, asthma, and diabetes, which would satisfy the second prong of the C criteria–presence of a "physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R. Pt. 404, Subpt. P., App. 1, § 12.05; *Luckey*, 890 F.2d at 669. This evidence is contradictory to the ALJ's conclusion that Claimant had no physical or other mental impairment imposing an additional and significant work-related limitation of function. Accordingly, the ALJ erred in failing to explain his findings that claimant did not have a valid verbal, performance, or full scale IQ of 60 through 70 or a physical or other mental impairment imposing an additional and significant work-related limitation of function when there is evidence in the record to the contrary.

In sum, the ALJ failed to adequately explain his findings and to address significant conflicting evidence in the record with respect to Listing 12.05C. It is not the role of the court to weigh the evidence or substitute its reasoning for that of the Commissioner, and the undersigned expresses no opinion as to whether Claimant's limitations met Listing 12.05C. Accordingly, it is recommended that the matter be remanded for the ALJ to conduct the appropriate analysis with regard to Listing 12.05C and to explain the basis for his conclusion.

## B.     New and Material Evidence

Plaintiff contends that a subsequent favorable decision finding Claimant was disabled

14

beginning July 8, 2010, which was one day after the unfavorable decision was issued by ALJ Perlowski, constitutes new and material evidence warranting remand. Pl.'s Mem. at 8-9. When a claimant submits evidence that has not been presented to the ALJ, the court may consider the evidence only for the limited purpose of deciding whether to issue a sentence-six remand under 42 U.S.C. § 405(g). Under sentence-six, "[t]he court . . . may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g). In a sentence-six remand, the court does not rule on the correctness of the administrative decision, neither affirming, modifying, nor reversing the Commissioner's decision. *Melkonyan v. Sullivan*, 501 U.S. 89, 98 (1991). "Rather, the court remands because new evidence has come to light that was not available to the claimant at the time of the administrative proceeding and that evidence might have changed the outcome of the prior proceeding." *Id.*

"Courts in this district have recognized that a subsequent finding of disability can constitute new and material evidence that could change the outcome of the first decision, reasoning that a subsequent finding of disability 'based on an onset date coming in immediate proximity to an earlier denial of benefits is worthy of further administrative scrutiny to determine whether the favorable event should alter the initial, negative outcome of the claim.'" *Bryant v. Astrue*, No. 7:11-CV-00054-D, 2012 WL 895425, at *7 (E.D.N.C. Feb. 10, 2012) (citations omitted), *report and recommendation adopted*, 2012 WL 896147 (E.D.N.C. Mar. 15, 2012). This court has also acknowledged the Fourth Circuit's footnote in the unreported per curiam decision of *Baker v. Comm'r of Soc. Sec.*, No. 12-1709, 2013 WL 1866936, at *1 n.* (4th Cir. May 6, 2013), stating "'[a]

15

subsequent favorable decision itself, as opposed to the evidence supporting the subsequent decision, does not constitute new and material evidence under § 405(g).'" *Woodall v. Colvin*, No. 5:12-CV-357-D, 2013 WL 4068142, at \*6 (E.D.N.C. Aug. 12, 2013) (quoting *Baker*, 2013 WL 1866936, at \*1 n.\*) (quoting *Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 654 (6th Cir. 2009)). However, this court in *Woodall* declined to follow *Baker*, because "it is unreported and therefore not binding precedent (as expressly noted in *Baker* itself, 2013 WL 1866936, at \*1); it does not address *Bird* [*v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 343 (4th Cir. 2012)]; and it is factually distinguishable in that the plaintiff there did not, as here, meet 'her burden of showing that evidence relied upon in reaching the favorable decision pertains to the period under consideration in this appeal.'" *Woodall*, 2013 WL 4068142, at \*6 (quoting *Baker*, 2013 WL 1866936, at \*1 n.\*).

In the present case, the subsequent decision issued by ALJ Wanda Wright on February 13, 2013, considered whether Claimant was disabled from July 8, 2010 through the date of Claimant's death, October 13, 2011. Pl.'s Mem. Ex. 1 [19-1] at 5. ALJ Wright determined that Claimant could perform sedentary work with the additional limitations of standing or walking less than two hours daily and sitting less than six hours daily, which eroded the number of jobs Claimant could perform to the point that a finding of disabled was warranted. *Id.* at 8, 11. ALJ Wright cited in support of this conclusion a consultative examination from October 4, 2010, showing Claimant had been placed on oxygen for her asthma, medical records from Lenoir Memorial Hospital showing Claimant's breathing and heart conditions worsened beginning in August 2011, and that as of February 2011, Claimant required "extensive personal care assistance" *Id.* at 9-10. ALJ Wright also noted that the RFC assessment was supported by "the totality of medical evidence, including treatment records and diagnostic testing documenting the claimant's decline after July 7, 2010." *Id.* at 10.

16

The favorable decision by ALJ Wright makes clear that it was based on Claimant's declining health subsequent to the unfavorable decision at issue in the present case. The evidence cited by ALJ Wright pertained to Claimant's breathing and heart conditions worsening in October 2010 and August 2011, which expressly contradicts the Plaintiff's argument that ALJ Wright "necessarily relied on the evidence submitted to ALJ Perlowski . . . ." Pl.'s Mem. at 9. In fact, ALJ Wright cited little or no evidence from the time period prior to July 8, 2010, in support of the favorable decision. Thus, Plaintiff has failed to meet his "'burden of showing that evidence relied upon in reaching the favorable decision pertains to the period under consideration in this appeal.'" *Woodall*, 2013 WL 4068142, at *6 (quoting *Baker*, 2013 WL 1866936, at *1 n.*). Accordingly, under these facts and circumstances, the subsequent favorable decision is not material and does not warrant remand.[4]

## VI. CONCLUSION

For the reasons stated above, it is RECOMMENDED that Claimant's Motion for Judgment on the Pleadings [DE-18] be GRANTED, Defendant's Motion for Judgment on the Pleadings [DE-26] be DENIED, and the case be remanded for the ALJ to conduct the appropriate analysis regarding Listing 12.05C and to explain the basis for his conclusion.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have fourteen (14) days upon receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected

---

[4] Although not an independent basis for remand, as a practical matter, to the extent the case is remanded for reconsideration of Listing 12.05C, the Commissioner may wish to consider the subsequent favorable decision to ensure it should not alter the prior unfavorable decision.

to, and accepted by, the District Court.

SUBMITTED, this the 11th day of February 2014.

Robert B. Jones, Jr.
United States Magistrate Judge

18